UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIANSHU CHENG,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.,*<br><br>    Defendants. | Case No. 20-cv-01962-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

This matter comes before the Court upon consideration of the motion to dismiss filed by Defendants, United States Citizenship and Immigration Services ("USCIS") and Kenneth T. Cuccinelli, in his official capacity as Acting Director of USCIS (collectively "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court HEREBY GRANTS Defendants' motion.

**BACKGROUND**

On March 20, 2020, Plaintiff filed the original complaint in this case, in which he asserted Defendants violated the Administrative Procedure Act, 5 U.S.C. section 706(2)(A), by denying his application for an Employment Authorization Document ("EAD") under the STEM Optional Practical Training Extension Program ("STEM OPT"). (*See generally* Dkt. No. 1, Complaint ("Compl.").) USCIS denied the application on March 2, 2020. Plaintiff alleged that UCSIS incorrectly determined that Plaintiff lost his student status because he had applied for and received an H-1B work permit. Plaintiff alleged that, in fact, he had not lost his student status because he did not go through consular processing. Thus, the H-1B work permit was not activated. (Compl. ¶¶ 34-60.) Plaintiff alleged that the denial was "contrary to the USCIS' ordinary practice" because

1

1    USCIS did not provide him an opportunity "to supplement or clarify the record." To support that

2    allegation, Plaintiff cited a USCIS Policy Memorandum dated June 3, 2013 (the "2013 Policy

3    Memorandum"). (*Id.* ¶¶ 55-56, Ex. F.)

4          On April 22, 2020, USCIS reopened Plaintiff's case and approved the application. (Dkt.

5    No. 21-1, Declaration of Kendra Shyne ("Shyne Decl."), ¶¶ 2-3.) On May 21, 2020, Defendants

6    moved to dismiss the complaint because Plaintiff received the relief he requested, which they

7    argued rendered the claim moot. On June 11, 2020, in lieu of opposing the motion, Plaintiff filed

8    an amended complaint ("FAC"). Defendants moved to dismiss and renewed their argument that

9    Plaintiff's claims were moot and also argued he lacked standing. The Court granted Defendants'

10   motion on August 31, 2020 and provided Plaintiff with a final opportunity to amend.

11         In his Second Amended Complaint ("SAC"), as he did in the FAC, Plaintiff alleges his

12   claims arise out of "USCIS' establishment and enforcement of an unlawful Policy Memorandum

13   published on July 13, 2018[,]" which became effective on September 11, 2018 (the "2018 Policy

14   Memorandum"). (SAC ¶ 1.) By its terms, the 2018 Policy Memorandum "rescinds in its entirety"

15   the 2013 Policy Memorandum. (SAC, Ex. F (2018 Policy Memorandum at 1).) According to

16   Plaintiff, the 2018 Policy Memorandum allows USCIS to deny an application for immigration

17   benefits without providing an applicant the opportunity to provide additional information in

18   response to a denial, in contravention of the 2013 Policy Memorandum. (*Id.* ¶¶ 56-65.) Plaintiff

19   asserts that USCIS's actions in adopting the 2018 Policy Memorandum, and its reasons for doing

20   so, are arbitrary and capricious. (*Id.* ¶¶ 76, 103-112.)

21         Plaintiff's SAC is substantially similar to the FAC. However, in response to the Court's

22   Order concluding Plaintiff had failed to allege facts to show he had standing or to show his claims

23   were not moot, he now alleges that when USCIS denied his application for a STEM OPT permit, it

24   also caused him to lose his student status. Plaintiff alleges that when he lost student status, he

25   suffered a number of injuries that were not rectified when USCIS reversed its initial denial. (*See,*

26   *e.g., id.* ¶¶ 53, 78-91.) Plaintiff also alleges that because his STEM OPT permit expires in

27   February 2022 and his H-1B visa will expire in June 2022, he "will have to file at least one

28   petition with … USCIS again to extend, change, or otherwise maintain his immigration status" in

2

17 to 22 months.  (*Id.* ¶¶ 81-82.)

Plaintiff asserts one claim for relief, which challenges the validity of the 2018 Policy Memorandum and is couched in terms of challenges under the APA.  (*Id.* ¶¶ 103-112.)  In his prayer for relief seeks various declarations regarding his immigration status and authorization to work.  (*Id.*, Prayer for Relief.)

The Court will address additional facts as necessary in its analysis.

## ANALYSIS

**A.    Applicable Legal Standard.**

Defendants move to dismiss for lack of jurisdiction on the basis that Plaintiff's claim is moot and on the basis that he lacks Article III standing.  The Court evaluates those arguments pursuant to Rule 12(b)(1).[1]  *See Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015) ("Mootness is a jurisdictional issue."); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (motion to dismiss for lack of standing governed by Rule 12(b)(1)).  When a defendant makes a facial challenge to jurisdiction, the factual allegations of the complaint are taken as true.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal citation and quotations omitted).  The plaintiff is then entitled to have those facts construed in the light most favorable to him or her.  *Fed'n of African Am. Contractors*, 96 F.3d at 1207.

In contrast, a factual attack on subject matter jurisdiction occurs when a defendant challenges the actual lack of jurisdiction with affidavits or other evidence.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "When the defendant raises a factual attack, the plaintiff must support … jurisdictional allegations with 'competent proof,' under the same evidentiary

---

[1]    Plaintiff objects to most of Defendants' memorandum of law, rather than the declaration submitted with their motion.  The Court OVERRULES Plaintiff's objections, which are directed at legal argument rather than factual assertions.

3

1  standard that governs in the summary judgment context." *Id.* at 1121 (quoting *Hertz Corp. v.

2  Friend*, 559 U.S. 77, 96-97 (2010)).  The district court may resolve those factual disputes itself,

3  unless "the existence of jurisdiction turns on disputed factual issues[.]" *Id.* at 1121-22 (citations

4  omitted).

**B.     Legal Standards Regarding Article III Standing and Mootness.**

   **1.     Standing.**

At the pleading stage, a plaintiff "must 'clearly … allege facts demonstrating' each element" of Article III's standing requirements.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 922 (9th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  Those requirements are that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61).  In addition, "[s]tanding must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties."  *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Friends of the Earth v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

In order to show standing to pursue injunctive relief, a plaintiff must "demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that he will again be wronged in a similar way.'"  *Bates*, 511 F.3d at 985 (quoting first *Lujan*, 504 U.S. at 560 and then *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  The latter inquiry turns on whether the plaintiff has a "real and immediate threat of repeated injury." *Id.*  The threat of future injury cannot be "conjectural or hypothetical" but must be "certainly impending" to constitute an injury in fact for injunctive relief purposes.  *Davidson v. Kimberly Clark*, 889 F.3d 956, 967 (9th Cir. 2018).

   **2.     Mootness.**

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (holding a case is moot if "interim relief or

1  events have completely and irrevocably eradicated the effects of the alleged violation"). If "an

2  opposing party has agreed to everything the other party has demanded," the case may be

3  considered moot. *GCB Commc'ns, Inc. v. U.S. Commc'ns, Inc.*, 650 F.3d 1257, 1267 (9th Cir.

4  2011). An exception to the mootness doctrine involves actions that are "capable of repetition, yet

5  evading review," which is a narrow exception to be applied in "exceptional situations." *Lee v.

6  Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1990) (citing *Lyons*, 461 U.S. at 109). To rely on

7  this exception, a plaintiff has the burden to show "there is a reasonable expectation that [he] will

8  once again be subjected to the challenged activity. … Specifically, the plaintiff must establish a

9  demonstrated probability that the same controversy will recur involving the same litigants." *Id.*

10  (citations omitted).

**C.   The Court Dismisses the Complaint.**

Plaintiff continues to argue the 2018 Policy Memorandum is arbitrary and capricious and is contrary to law, and seeks to invalidate it under the APA. Plaintiff also argues he was injured by Defendants' decision to initially deny his STEM-OPT permit because he was unemployed for a period of time. Under applicable regulations, students in F-1 status can only accrue a certain amount of unemployment. *See* 8 C.F.R. 214.2(f)(1)(ii)(E). Plaintiff does not allege that he exceeded the amount allowed under the regulation; his concern is that it may count against him in the future and seeks declarations that he was not out of status while he was unemployed. The Court concludes Plaintiff has not shown a declaration that the 2018 Policy Memorandum would redress any past harms he has suffered, including any harm caused by the period of unemployment, because Defendants have granted him the STEM-OPT permit.

Plaintiff also seeks an injunction preventing the Defendants from enforcing or applying the 2018 Policy Memorandum to future applications. Although Plaintiff provides more detail about when he may submit such an application, the Court concludes those new facts do not demonstrate that the possibility Defendants would apply the allegedly unlawful 2018 Policy Memorandum in a manner that would result in the denial of a future application is anything but conjectural or hypothetical. The Court also concludes those new facts do not show that the threat of future injury

1  is "certainly impending." *Davidson*, 889 F.3d at 967.[2]

2  Finally, to the extent Plaintiff has invoked relief under the Declaratory Judgment Act, for
3  the reasons set forth above, he fails to show an "actual controversy" rather than a hypothetical
4  future dispute. *See, e.g., Sellers v. Regents of the Univ. of Cal.*, 432 F.2d 493, 500 (9th Cir. 1970)
5  ("[D]eclaratory relief cannot be granted where the alleged controversy is hypothetical.").

6  Accordingly, the Court GRANTS Defendants' motion to dismiss, without prejudice, for
7  lack of jurisdiction. *See S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 508 (9th Cir.
8  1990). The Court shall enter a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: December 14, 2020

_____
JEFFREY S. WHITE
United States District Judge

---

[2] Plaintiff also fails to show why, if any of those applications were to be denied on the basis of the 2018 Policy Memorandum, why a denial would evade review.